## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

### NO. 7:12-CV-297-FL

| | |
|---|---|
| JACALYN FRENCH, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-20, -22] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Jacalyn French ("Plaintiff" or "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for Disabled Widow's Insurance Benefits ("DWB") claimed pursuant to 42 U.S.C. § 402(e). Plaintiff filed a response to Defendant's motion [DE-24], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be denied and Defendant's Motion for Judgment on the Pleadings be granted, upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant filed an application for DWB on April 6, 2009, alleging disability beginning April 30, 2004, and her claim was denied initially and upon reconsideration. (R. 55-56, 118-23). A hearing before an Administrative Law Judge ("ALJ") was held on October 29, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R.

34-52). On November 19, 2010, the ALJ issued a decision denying Claimant's request for benefits (R. 15-33), and the Appeals Counsel denied Claimant's request for review on August 14, 2012 (R. 1-5). Claimant then filed a complaint in this court, seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges (1) the ALJ erred by failing to consider whether Claimant's delusions of parasitosis is a severe impairment; (2) the ALJ erred in failing to consider whether Claimant's mental impairments meet or equal Listings 12.03 or 12.07; (3) the ALJ's RFC assessment is not supported by substantial evidence; and (4) the VE's testimony does not support

3

the ALJ's finding at step five that there is other work in the economy that Claimant can perform. Pl.'s Mem. [DE-21] at 9-22.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

The ALJ first determined that Claimant is the unmarried widow of a deceased insured worker and had attained the age of 50, thus meeting the non-disability requirements for DWB. (R. 20). The ALJ next determined that April 30, 2004, was the end of the prescribed period by which Claimant must establish that her disability began in order to be entitled to DWB. (R. 18, 20). Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 20-28). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since April 30, 2004, the alleged onset date. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: Lyme's disease, depression, and anxiety. (R. 20-21). At step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-22). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in no limitations in activities of daily living, mild difficulties in social functioning, mild to moderate limitations in concentration, persistence or pace, and no episodes of decompensation of extended duration. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with additional limitations (i.e., no climbing, crawling, or

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

4

exposure to industrial hazards, no work activity requiring fine visual acuity, and work must be unskilled). (R. 22-26). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 24).

At step four, the ALJ concluded that Claimant could not perform the requirements of her past relevant work. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27-28). Accordingly, the ALJ determined Claimant was not disabled during the relevant period. (R. 28).

## B. Testimony of Claimant

At the time of the administrative hearing, Claimant was 55 years old and unmarried. (R. 36). Claimant did not work, received SSI as her only source of income, and was living with her 81-year-old mother. (R. 37). Claimant completed the tenth grade and was unable to obtain a GED. *Id.*

Claimant testified that prior to 2004, she was diagnosed with Lyme disease after becoming ill with a stiff spine and neck, high fever, and blindness in her peripheral vision. (R. 38). Claimant experienced symptoms on the right side of her body, including her right hip and right arm, spine pain, a stiff neck, head pain in the front, back, and top of her head, severe dehydration, blood in her urine, pain in her chest bone, "head fog" impacting her ability to spell words properly or concentrate enough to read, problems with coordination and walking, and

---

To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

fatigue. (R. 38-39). Claimant had been a musician and could no longer play guitar or type on a computer keyboard. *Id.* The symptoms persisted for years, and Claimant continues to have problems as a result of the Lyme disease. (R. 39). Claimant also had severe liver pain and turned bronze-colored. *Id.* She began treatment with antibiotics in 2001, and in 2003 she began taking antiparsiticals. *Id.* At the time of the hearing, Claimant was no longer taking these medications due to liver damage. *Id.* Claimant also began using eye ointment for retinal lesions in 2001, and in 2007 was placed on antibiotics for her eyes. *Id.* The drops, which she uses daily up to four times, blur her vision for an hour and a half and she applies cold compresses to her eyes. (R. 40). At the time of the hearing, Claimant was experiencing pain in her right shoulder joint, right elbow, right kneecap, right hip, the left side of her neck and down her spine midway, and on the top of her head. *Id.* In February 2002, Claimant developed Bell's palsy, which caused her eyelids to droop and paralysis on the right side of her face, which she continued to experience at the time of the hearing. (R. 40-41). Claimant has a history of depression and anxiety, for which she has received treatment since 1999, and began seeing a specialist in 2007. (R. 41-42). Claimant previously took Valium for depression and anxiety, but was unable to take any other medication due to liver damage. (R. 42).

Prior to contracting Lyme disease, Claimant was an active person; however, her condition quickly deteriorated, resulting in muscle and weight loss. (R. 43). Claimant could care for herself, but experienced fatigue after activities, such as showering, which would require an hour to an hour and a half of rest before resuming activity. *Id.* Claimant testified that she did not cook and that her mother did the laundry and most of the chores. (R. 44). Claimant experiences pain in her spine and chest at night and uses Lidoderm patches and a heating pad for

6

relief. *Id.* Claimant sleeps ten to twelve hours a day, including naps, and watches television during the day, characterizing herself as generally lethargic. (R. 45, 47). She could sit for 25 minutes before needing to stand and stretch to relieve her pain, and could stand for 25 to 30 minutes before needing to sit. (R. 45-46). Claimant tries to read books, but it is difficult for her to concentrate and her reading comprehension has deteriorated. (R. 46). Claimant cannot type, because her thumbs are twisted and her left hand and fingers do not function correctly. (R. 46-47). Claimant cannot lift anything, not even a gallon of milk, and has limited range of motion in her neck, back, and leg. (R. 47). Claimant has a driver's license, but only drives approximately three times per month. (R. 48).

## C. Testimony of Vocational Expert

Dr. Arthur Schmidt testified as a VE at the administrative hearing. (R. 48-51). After the VE's testimony regarding Claimant's past work experience (R. 48), the ALJ posed the following hypothetical:

> Doctor, please assume a hypothetical worker same age as Ms. French, same work history and background, retaining both sedentary and light exertional capacities, but I would request, if possible, two occupations at each level. The following limitations apply equally to each: no climbing or crawling; no exposure to industrial hazards; no requirement for fine visual acuity.

(R. 49). The VE testified that the limitations given would eliminate Claimant's prior work as a driving instructor. (R. 49-50). The ALJ then asked whether the VE could identify "other unskilled work that would be consistent?" (R. 50). The VE opined that the hypothetical individual could perform the following unskilled jobs: storage facility clerk (DOT # 295.367-026), machine tender (DOT # 920.665-018), surveillance system monitor (DOT # 379.367-014), and telephone quotation clerk (DOT # 237.367-046). *Id.* In response to questioning by

7

Claimant's counsel, the VE opined that if the hypothetical person described by the ALJ were limited to only sedentary jobs and was unable to concentrate for more than half an hour at a time and would be absent more than three times in a month, such an individual would not be able to perform the above listed jobs. (R. 50-51).

## V. DISCUSSION

### A. ALJ's Failure to Consider Whether Delusions of Parasitosis is a Severe Impairment

#### 1. New and Material Evidence

Claimant first contends that additional medical records and a letter discussing Claimant's diagnosis of delusions of parasitosis were new and material evidence, submitted in the first instance to the Appeals Council, which could have provided a basis for changing the ALJ's findings at steps two, three, and five. Pl.'s Mem. at 11-13. The Appeals Council incorporated into the record medical records from Dr. Michael Namey dated September 7, 2000, through October 2, 2003, which were labeled "Exhibit 33F." (R. 1, 5, 576-96). The Appeals Council determined that these records contained essentially the same information contained in prior records from Dr. Joseph, which were already in the record and, thus, provided no basis for changing the ALJ's decision. (R. 2).

The Appeals Council must consider additional evidence if (1) the evidence is new; i.e., not duplicative or cumulative of that which is already in the record; (2) the evidence is material; i.e., there exists a reasonable possibility that the new evidence would have changed the outcome; and (3) the evidence "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *see also Wilkins v. Sec'y, Health & Human Servs*., 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). Where the Appeals Council incorporates additional evidence into

8

the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96. In particular, the court must evaluate if this later-submitted evidence would affect the ALJ's determination. *King v. Barnhart*, 415 F. Supp. 2d 607, 613 (E.D.N.C. 2005); *see also Daniels v. Astrue*, 564 F. Supp. 2d 536, 538 (E.D.N.C. 2008) (explaining additional evidence incorporated into the record by the Appeals Council "must be considered in a determination of whether the [ALJ's] decision was supported by substantial evidence.").

Claimant first contends that it is unclear whether the Appeals Council specifically considered an October 2, 2003 letter from Drs. Rofgha and Kress stating that Claimant had been diagnosed with delusions of parasitosis, that they had been unsuccessful in treating this condition, that it was "spiraling out of control," and Claimant was becoming "more and more irrational." Pl.'s Mem. at 12-13; (R. 584). The October 2, 2003 letter from Drs. Rofgha and Kress to Dr. Namey was included in Dr. Namey's medical records submitted to the Appeals Council labeled "Exhibit 33F," and there is no reason to believe the Appeals Council did not consider the letter along with Dr. Namey's other records. In fact, counsel for Claimant referred to this group of documents generally as "Medical Records dated 09/07/2000 to 10/02/2003 from Michael Namey M.D." when submitting them to the Appeals Council and did not differentiate between the letter and the other records from Dr. Namey's file. (R. 576). Thus, the fact that the Appeals Council did not differentiate the letter from the other documents when referring to Dr. Namey's records does not, as Claimant suggests, support an inference that the Appeals Council failed to consider the October 2, 2003 letter included within these records.

9

Claimant next contends that the new evidence was not cumulative of other records, because the October 2, 2003 letter represents the first time Claimant was diagnosed with delusions of parasitosis and indicates Claimant was suffering from this impairment prior to the end of the prescribed period, April 30, 2004. Pl.'s Mem. at 13. Dr. Namey's treatment notes, which the ALJ considered and referred to in his decision (R. 23-24), specifically noted Claimant's delusions of parasitosis on October, 3, 2003 and February 9, 2004, and generally noted Claimant's belief that she was infested with parasites on other occasions prior to April 30, 2004 (R. 314-17). The ALJ also considered the treatment notes of Dr. LaRose and Dr. Miranda, assessing Claimant with delusions of parasitosis prior to April 30, 2004, but noted that there was "no evidence that she exhibited any significant mental abnormalities or cognitive deficits as a result of her mental impairments prior to April 2004." (R. 24). The October 2, 2003 letter does not address what limitations, if any, Claimant experienced as a result of her delusions of parasitosis. (R. 584). Finally, the October 2, 2003 letter does not convey new information. The letter by its own terms indicates that Claimant's diagnosis of delusions of parasitosis was already known to Dr. Namey (R. 584), and Dr. Joseph's treatment records indicated Claimant's need for psychological intervention to address the condition (R. 479-85). Accordingly, the additional material submitted to the Appeals Council was not new and material.

## 2. ALJ's Severe Impairment Analysis

Claimant argues that the ALJ erred in failing to classify Claimant's delusions of parasitosis as a severe impairment and in failing to apply the special technique. Pl.'s Mem. at 13-15. At step two, an ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. § 404.1523. As long as a claimant has any severe

10

impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *See* 20 C.F.R. § 404.1523; *see also* SSR 96-8p, 1996 WL 374184, at \*5 (July 2, 1996) (explaining when an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). Thus, "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at \*2 (E.D.N.C. Feb. 23, 2009).

Here, although the ALJ did not characterize Claimant's delusions of parasitosis as a severe impairment, the ALJ adequately considered the condition in the decision. The ALJ acknowledged Claimant's diagnosis of delusions of parasitosis by Dr. LaRose and Dr. Miranda, as well as Dr. Namey's assessment that Claimant suffered "anxiety and depression stemming from her dermatitis and her belief that she had parasites covering her body" (R. 24), and the ALJ did classify Claimant's related anxiety and depression as severe impairments (R. 20-21). However, the ALJ found no evidence of hospitalizations or treatment by a mental health facility and no evidence of deficits or limitations prior to April 30, 2004, as a result of Claimant's mental impairments. (R. 24). *See Fields v. Astrue*, No. 5:10-CV-463-FL, 2011 WL 6019902, at \*8 (E.D.N.C. Nov. 3, 2011) ("[T]he diagnosis of a condition is not enough to prove disability; '[t]here must be a showing of related functional loss.'") (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)), *adopted by*, 2011 WL 6019951 (E.D.N.C. Dec. 2, 2011). Moreover, at the administrative hearing, Claimant provided little or no testimony regarding her diagnosis of

11

delusions of parasitosis or how it impacted her ability to work, despite being represented and questioned by counsel. (R. 36-48). *See Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) (adopting memorandum and recommendation in which magistrate judge found no error in ALJ's failure to discuss several alleged impairments, citing the claimant's failure to testify as to those conditions and their impact on ability to work) (citing *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel, the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)).

Finally, the ALJ's application of the special technique sufficiently addressed Claimant's restrictions as a result of her "mental impairments" generally, which would include any restrictions related to delusions of parasitosis. (R. 21). Furthermore, as previously noted, the ALJ's RFC analysis states he found no evidence of deficits or limitations caused by Claimant's delusions of parasitosis, anxiety, and depression prior to April 2004 (R. 24); thus, there is no reason to believe the ALJ's application of the special technique would have led to a different result had the ALJ included Claimant's delusions of parasitosis as a severe impairment. Accordingly, the ALJ's failure to find Claimant's delusions of parasitosis was a severe impairment is not reversible error.

**B.    The ALJ's Failure to Consider Listings 12.03 and 12.07**

Claimant contends that the ALJ erred in failing to consider whether her mental impairments meet or equal Listing 12.03 (Schizophrenic, paranoid, and other psychotic disorders) or Listing 12.07 (Somatic Disorders). Pl.'s Resp. [DE-24] at 1-3. "[A]lthough the

12

ALJ should 'identify the relevant listings and . . . explicitly compare the claimant's symptoms to the requirements [,] . . . [m]eaningful review may be possible even absent the explicit step-by-step analysis . . . where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.'" *Chaple v. Astrue*, No. 5:11-CV-00061-D, 2012 WL 937260, at *2 (E.D.N.C. Mar. 20, 2012) (quoting *Johnson v. Astrue*, No. 5:08-CV-515-FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) and citing *Green v. Chater*, No. 94-2049, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995); *Russell v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995)). Notably, while Claimant asserts consideration of these Listings was "appropriate," she does not argue that her mental impairments do, in fact, meet or equal these Listings, and it is clear from the ALJ's discussion that they do not.

To satisfy any of the Mental Disorders Listings, the Claimant must satisfy "the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Listings 12.03 and 12.07 contain the same paragraph B criteria as Listings 12.04 and 12.06. *Id.* §§ 12.03, 12.04, 12.06, 12.07. The ALJ, in considering whether Claimant met Listings 12.04 and 12.06, considered Claimant's mental impairments, singly and in combination, and found that they failed to satisfy the paragraph B criteria. (R. 21). Listing 12.07 does not contain an alterative set of paragraph C criteria; thus, the ALJ's finding that Claimant did not satisfy the paragraph B criteria is conclusive with respect to Listing 12.07. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07.

Listing 12.03 does contain an alterative set of paragraph C criteria:

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a

13

minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03. The first requirement of the paragraph C criteria is a "[m]edically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration *that has caused more than a minimal limitation of ability to do basic work activities*." *Id.* (emphasis added). The ALJ expressly found in making his RFC determination that "there is no evidence showing the claimant's delusions, anxiety, depression, and PTSD more than minimally affected her ability to perform work-related activity prior to [the end of the prescribed period]." (R. 25). Thus, Claimant's mental impairments do not satisfy the paragraph C criteria for Listing 12.03. Because Claimant's mental impairments do not satisfy the paragraph B or C criteria, Listing 12.03 is not satisfied. Accordingly, any error on the part of the ALJ in failing to consider Listings 12.03 and 12.07 was harmless.

## C.    The ALJ's RFC Analysis

Claimant contends that the ALJ's RFC assessment fails to include all of Claimant's physical and mental limitations and is not supported by substantial evidence. Pl.'s Mem. at 16-20. An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see*

14

*also* SSR 96-8p, 1996 WL 374184, at \*1. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at \*5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Claimant first contends that the ALJ failed to include limitations stemming from Claimant's delusions of parasitosis, depression, and anxiety in the RFC finding. Pl.'s Mem. at 16-18. Claimant specifically cites treatment notes documenting observations regarding Claimant's delusions and bizzare behaviors and asserts that the ALJ failed to consider how these delusions affected Claimant's ability to work. As discussed above, *see supra* section V.A.2, the ALJ specifically addressed Claimant's delusions of parasitosis, anxiety, and depression, but determined that the record lacked evidence of deficits or limitations prior to April 30, 2004, as a result of these mental impairments. (R. 24). The records cited by Claimant (R. 253-59, 312-14, 334, 478-82, 484, 503, 527, 584) do not contradict the ALJ's finding, in that they fail to demonstrate how Claimant's mental impairments limited her ability to work in greater degree than the ALJ's RFC determination. Furthermore, the ALJ did limit Claimant to light work, including a further restriction to unskilled work based on Claimant's history of depression and anxiety. (R. 26). *See Hall v. Harris*, 658 F.2d 260, 266 n.2 (4th Cir. 1981) ("Unskilled work

15

denotes work which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time."). Accordingly, the ALJ appropriately considered and accounted for Claimant's delusions of parasitosis, depression, and anxiety in the RFC finding, which is supported by substantial evidence.

Next Claimant contends that the ALJ failed to properly assess the medical opinions of record when formulating Claimant's RFC. Pl.'s Mem. at 18-19. Specifically, Claimant takes issue with the ALJ's decision to assign greater weight to the opinion of a non-examining State agency physician than to Claimant's treating and examining physicians. *Id.* The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); 20 C.F.R. § 404.1527(c)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following nonexclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the

16

physician is a specialist. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Dr. Namey, Claimant's treating physician, opined in November 2009 that Claimant had been totally disabled from at least June 2000:

> This is a letter in regards to my previous patient Jacalyn S. French. Mrs. French had been a patient in this office for approximately 10 years. She was last seen in this office in October 2007, she did receive prescription refills in January, 2008. Mrs. French had been treated for numerous problems including but not limited to right upper quadrant pain, irritable bowel syndrome, multiple urinary tract infections, pyelonephritis and asthma seasonal in nature. She was also treated in relation to delusions of parasitosis, found not to be infested but she refused to believe this. She has had numerous episodes of delusions regarding parasites, with negative results each time. She has consist[e]ntly refused any mental health intervention.
>
> Due to her numerous mental problems and her refusal to seek treatment I feel that Mrs. French is totally disabled from at least June, 2000 until the present time.

(R. 527). The ALJ gave the November 2009 opinion of Dr. Namey little weight:

> The undersigned has also considered the November 2009 opinion of Dr. Namey that the claimant has been totally disabled since at least June 2000 as a result of her numerous mental problems and her refusal to seek treatment. (Exhibit 26F). Dr. Namey's opinion has been given little weight, as the issue of disability is one reserved for the Commissioner. Furthermore, while there is evidence showing the severity of the claimant's mental impairments worsened after April 2004, there is no evidence showing the claimant's delusions, anxiety, depression, and PTSD more than minimally affected her ability to perform work-related activity prior to that time. Accordingly, Dr. Namey's opinion has been given little weight.

17

(R. 25). Claimant contends Dr. Namey's chart notes, prior to April 2004, indicate Claimant sought treatment for her physical and mental impairments on an almost weekly basis, contain references to Claimant's delusions and anxiety, demonstrate her bizzare behavior regarding her use of antibiotics, topical creams, and canine flea and tick shampoo, and reflect that Dr. Namey consistently prescribed Valium for Claimant. (R. 315-18).

Statements concerning an individual's inability to work are reserved to the Commissioner; nevertheless, such statements must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence. *See* 20 C.F.R. § 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). Here, the ALJ discounted Dr. Namey's opinion with respect to the period prior to April 30, 2004, because the record lacked evidence that the conditions noted by Dr. Namey more than minimally impacted Claimant's ability to work during the prescribed period. Dr. Namey's treatment notes cited by Claimant do not contradict this finding. As explained above, *see supra* section V.A.2, the mere existence of a condition does not prove disability; a related limitation resulting from the condition must be shown. *Fields*, 2011 WL 6019902, at *8 (citation omitted). Neither Dr. Namey's treatment records, nor other treatment records, indicate that Claimant's conditions reduced Claimant's ability to work during the prescribed period in greater degree than determined by the ALJ in the RFC analysis. Accordingly, the ALJ did not err in giving little weight to Dr. Namey's opinion.

Claimant also contends that the ALJ erred in assigning little weight to the opinions of Dr. Jeffrey Warhaftig, Karen Selz, M.A., Dr. Dorothy Gold, and Dr. Raja Chakrapani. (R. 24-26). Dr. Warhaftig opined on August 24, 2010, that "claimant is 100% disabled and not able to maintain gainful employment of any kind due to her post-traumatic stress disorder, anxiety disorder with psychotic features and conversion disorder." (R. 554). Selz opined on January 7, 2010, that "[i]t is likely reasonable that [Claimant's] disability began in June 2000, given the sequence of events that she has described," that Claimant's current diagnosis was major depressive disorder, recurrent, severe, with psychotic features, from which she suffers "depressed mood, sadness, emptiness, decreased interest in activities, loss of energy, difficulty concentrating and generalized anxiety," and that "[Claimant] is not able to do full-time, competitive work [and] is emotionally fragile and deteriorates rapidly to illogical thinking, becoming emotionally labile." (R. 544-45). Dr. Gold completed a medical source statement on April 14, 2008, indicating that Claimant had marked limitations in her ability to understand, remember, and carry out detailed instructions and to interact appropriately with the public and supervisors and extreme limitations in her ability to respond appropriately to work pressures and changes in a routine work setting, noting Claimant's extreme anxiousness and delusional disorder. (R. 414). Dr. Chakrapani opined on April 26, 2008, that Claimant was limited to lifting and carrying two to three pounds, walking one block, and sitting for one hour and noted a history of major depression for which she needed psychiatric consultation. (R. 422-26).

The ALJ considered each of these opinions, giving them little weight for a variety of reasons, chiefly that the opinions were rendered between four and six years after the prescribed period. (R.24-26). The Fourth Circuit has held that "medical evaluations made subsequent to

19

the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability." *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (citation omitted). However, in this case, the ALJ did not rely solely on the timing of the evaluations in discounting their value, but weighed the opinions in light of medical evidence from the relevant period, which does not support the degree of limitation Claimant exhibited at the time the opinions were rendered.[2] (R. 24-26). For example, while Selz opined in a January 2010 opinion that Claimant was disabled beginning in June 2000, Selz was not treating Claimant during the prescribed period and medical records from the prescribed period do not support Selz's opinion. (R. 25). *See Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *4 (E.D.N.C. June 4, 2013) (finding harmless error in ALJ's analysis of medical opinions where the "opinion regarding plaintiff's limitations in 2006 is not consistent with substantial evidence in the record pertaining to the time period of alleged disability supporting the ALJ's RFC determination . . . .") (citing *Ambrose v. Astrue*, No. 2:11-CV-683, 2013 WL 1308981, at *12 (E.D. Va. Mar. 28, 2013) (holding that failure to explain weight given to treating physician opinion harmless error where opinion issued two years after date last insured was "not consistent with the record during the relevant period")).

Claimant also contends that the ALJ's treatment of the non-examining state agency medical consultant's May 15, 2008 assessment was internally inconsistent and contrary to the regulations. The ALJ found the state agency medical consultant's assessment was entitled to significant weight, because it was consistent with the weight of other evidence in the record. (R. 26). Claimant points out that this assessment was also rendered after the end of the prescribed

---

[2] The ALJ acknowledged treatment notes after April 2004 indicating Claimant's depression and delusions worsened and that Claimant had been receiving SSI benefits since 2007. (R. 24-25).

period and should have likewise been discounted by the ALJ. However, the ALJ found this opinion to be consistent with the other evidence of record, which distinguishes it from those the ALJ discounted. *See Worthington v. Astrue*, No. 7:11-CV-00207-FL, 2012 WL 4026067, at *3 (E.D.N.C. Sept. 12, 2012) ("The ALJ was required to consider [the opinions of the non-examining consultants] and did not err in affording them more weight than those of plaintiff's treating and examining physicians where they were supported by substantial evidence in the record.") (citing *Rollinson v. Astrue*, No. 7:09-CV-137-FL, 2010 WL 1737690, at *7-8 (E.D.N.C. Apr. 9, 2010), *adopted by*, 2010 WL 1737644 (E.D.N.C. Apr. 29, 2010)). While Claimant may disagree with how the ALJ weighed the evidence, the role of the court is not to undertake to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner where, as here, the ALJ's determination is supported by substantial evidence. *See Craig*, 76 F.3d at 589. Accordingly, the ALJ did not err in evaluating the medical opinions in this case.

In sum, the ALJ's RFC assessment was in accordance with the law and supported by substantial evidence.

## D. The ALJ's Reliance on the VE's Testimony

Claimant first contends that because the RFC is not supported by substantial evidence, the VE's testimony based on the RFC does not support the ALJ's step five finding. Pl.'s Mem. at 20-21. Having rejected Claimant's contention that the RFC is not supported by substantial evidence, this argument also lacks merit.

Claimant next contends that assuming, *arguendo*, the RFC accurately reflects Claimant's impairments, the jobs listed by the VE fail to meet the requirements of the RFC. *Id.* at 21-22.

21

First, Claimant correctly points out, and the Commissioner concedes, that the Dictionary of Occupational Titles ("DOT") code the VE listed for the job of machine tender, 920.665-018, does not exist. However, such error is harmless where the VE identified other jobs that the hypothetical individual could perform. *See Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *13 (E.D.N.C. Mar. 23, 2011) (citing *Prunty v. Barnhart*, No. 6:04-CV-00038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden)), *adopted by*, 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs"). The VE did list other jobs that the hypothetical individual could perform (R. 27, 50), but Claimant takes issue with those as well, arguing that the jobs of storage facility clerk, surveillance system monitor, and telephone quotation clerk require frequent far or frequent near acuity, inconsistent with the ALJ's limitation of no fine visual acuity.

While the ALJ may meet his burden under step five of the evaluation process by calling a VE to testify to the issue of matching claimant's work skills with available occupations, 20 C.F.R. § 404.1566, the VE's testimony generally should be consistent with the DOT. SSR 00-4p, 2000 WL 1898704, at *2. As such, the ALJ is required to ask the VE whether any possible conflict exists between his testimony and the DOT, and, if the testimony appears to conflict with the DOT, to "elicit a reasonable explanation for the apparent conflict." *Id.* at *4; *see Oxendine v. Halter*, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ

22

must ask the expert how his . . . testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.") (citation omitted). However, the "regulations do not require the Commissioner or VE to rely on classifications in the DOT at all." *Brock v. Astrue*, No. 7:06-CV-52-D, 2007 WL 4287721, at *5 (E.D.N.C. Dec. 5, 2007). *See* SSR 00-4p, 2000 WL 1898704, at *2; *Cline v. Chater*, No. 95-2076, 1996 WL 189021, at *4 (4th Cir. Apr. 19, 1996) (stating the ALJ is justified in relying on VE's testimony, even where it may have differed from the job descriptions or classifications in the DOT).

The ALJ referenced Claimant's allegations of vision difficulties related to Lyme disease–blurred vision following use of eye drops–in limiting Claimant to jobs that do not require fine visual acuity. (R. 26). The DOT defines "far acuity" as "[c]larity of vision at 20 feet or more" and "near acuity" as "[c]larity of vision at 20 inches or less." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C (U.S. Department of Labor, Employment and Training Administration 1993). The term "fine visual acuity," utilized by the ALJ, is not defined in the DOT. *Honn v. Colvin*, No. 12-CV-38-GKF-FHM, 2013 WL 1196661, at *5 (N.D. Okla. Mar. 25, 2013). However, the lack of definition does not indicate inherent conflict among these terms or confusion as to what the ALJ meant by "fine visual acuity." The ALJ inquired as to whether the VE's testimony was consistent with the DOT, as required, and the VE answered in the affirmative. (R. 50). Claimant's speculation that the ALJ's visual limitation would preclude the jobs listed by the VE is insufficient to show error, particularly where Claimant's counsel questioned the VE regarding his opinion, but failed to inquire regarding the visual limitation and alleged conflict between the

23

visual limitation imposed by the ALJ and the jobs listed by the VE. (R. 50-51). *See Hagans v. Colvin*, No. 4:12-CV-134-FL, 2013 WL 5424604, at *11-12 (E.D.N.C. Sept. 26, 2013) (adopting memorandum and recommendation which found no error in ALJ's reliance on VE's testimony where claimant argued the jobs listed by the VE conflicted with ALJ's limitation of fine visual acuity); *Honn*, 2013 WL 1196661, at *6 (rejecting argument that "fine vision" limitation conflicted with "near acuity" and "far acuity" requirement and affirming ALJ's reliance on VE's testimony where VE stated there had been no deviation from the DOT and plaintiff's attorney failed to raise any objections at the hearing). Accordingly, the ALJ's determination that there are significant numbers of jobs available for a person with Claimant's limitations is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and

24

legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 24th day of February 2014.

Robert B. Jones, Jr.
United States Magistrate Judge